IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| HEIDI NEZBEDA and DAVID NEZBEDA,<br><br>Plaintiffs,<br><br>-against-<br><br>CONNECT 1 RECOVERY, LLC and MVTRAC, LLC a/k/a MVCONNECT, LLC,<br><br>Defendants. | Civil Case Number:<br><br>CIVIL ACTION<br>COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL |

Plaintiffs HEIDI NEZBEDA and DAVID NEZBEDA (hereinafter, "Plaintiffs"), both Georgia residents, brings this complaint by and through the undersigned attorneys, against Defendant CONNECT 1 RECOVERY, LLC and MVTRAC, LLC a/k/a MVCONNECT, LLC (hereinafter "Defendants").

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action under 28 U.S.C. § 1331, 15 U.S.C. § 1692 *et seq.* and 28 U.S.C. § 2201. The Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a).

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## NATURE OF THE ACTION

3. Plaintiffs bring this action after the Defendants egregiously breached the peace and illegally repossessed their vehicle, thereby blatantly violating OCGA § 11–9–609(b)(2). Plaintiffs also bring a claim against the Defendants for illegally repossessing their vehicle in violation of the Fair Debt Collection Practices Act, codified at 15 U.S.C. § 1692.

4. Plaintiffs are seeking statutory damages, actual damages and punitive damages, as well as

attorneys fees and costs.

## PARTIES

5. Plaintiff Heidi Nezbeda is a natural person and a resident of Dallas, Georgia and is a "Consumer" as defined by 15 U.S.C. §1692(a)(3).

6. Plaintiff David Nezbeda is the husband of Heidi Nezbeda, and is likewise a resident of Dallas, Georgia and is a "Consumer" as defined by 15 U.S.C. §1692(a)(3).

7. Defendant Connect 1 Recovery, LLC (hereinafter referred to as "Connect 1"), is a repossession company, with its place of business in Tennessee and Georgia.

8. Upon information and belief, Defendant Connect 1 is a company that uses the mail, telephone, or facsimile in a business the principal purpose of which is the enforcement of security interests, namely the repossession of vehicles by lenders.

9. Defendant Connect 1 is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6).

10. Defendant MVTrac, LLC a/k/a MVConnect, LLC (hereinafter referred to as "MV"), is a limited liability company that specializes in nationwide recovery management, skip tracing and repossession services on behalf of lenders and creditors, with its headquarters in Palatine, Illinois.

11. Upon information and belief, Defendant MV is a company that uses the mail, telephone, or facsimile in a business the principal purpose of which is the enforcement of security interests, namely the repossession of vehicles by lenders.

12. Defendant MV is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6).

## ALLEGATIONS OF FACT

13. Plaintiffs repeat, reiterate and incorporate the allegations contained in the above paragraphs with the same force and effect as if the same were set forth at length herein.

14. The Plaintiffs own a 2009 Chevy Suburban.

15. At a certain point when the Plaintiffs were financially strapped, Mrs. Nezbeda took out a title loan from Title Max.

16. The funds from the Title Max title loan were borrowed and used for personal and household reasons, and not for business reasons.

17. The Plaintiffs subsequently fell behind on their payments on the title loan.

18. The amounts owed on the Title Max loan is a 'debt' as defined by 15 U.S.C. § 1692a(5).

19. At some point prior to October 6, 2023, Title Max contracted with MV to repossess the Plaintiffs' vehicle.

20. Upon information and belief, MV does not perform any repossessions itself in Georgia, but contracts with repossession companies in all 50 states to carry out the actual repossessions.

21. Upon information and belief, after being contracted by Title Max to repossess the Plaintiff's vehicle, MV arranged for Connect 1 to carry out the actual repossession.

22. At approximately 6:20 p.m. on October 6, 2023, the Plaintiffs were eating dinner with their family and young children, when Mrs. Nezbeda noticed someone on their private property.

23. Mr. Nezbeda then went outside and saw the Defendants' tow truck backing onto the Plaintiffs' private property, in an effort to repossess the Plaintiffs' vehicle.

24. Mr. Nezbeda told the tow truck operator – later identified as an employee of Connect 1 - to stop what he doing and to get off his private property.

25. After the tow truck operator refused to leave, Mr. Nezbeda got into the Plaintiffs' vehicle,

intending to prevent the Defendants from taking the vehicle.

26. After Mr. Nezbeda placed his vehicle in Drive so that he could move his vehicle, the Defendants' tow truck operator quickly lowered his boom and recklessly lifted up the vehicle – with Mr. Nezbeda still inside of that vehicle – in order to try and repossess it.

27. Mr. Nezbeda started yelling at the repo agent to stop and to put him down, but the repo agent refused.

28. Mrs. Nezbeda also started yelling at the repo agent, telling him to stop the repossession, to put down her husband, and to leave the property.

29. The repo agent continued to refuse to stop the repossession.

30. Mrs. Nezbeda then stepped in front of the tow truck to physically stop the repossession with her body, and then called the police.

31. The repo agent then threatened to take Mr. Nezbeda for a ride, and started trying to drive his tow truck while still attached to the Plaintiffs' vehicle - which was still occupied by Mr. Nezbeda.

32. Mrs. Nezbeda then again stepped in front of the tow truck to physically stop the repossession with her body.

33. Growing frustrated, the tow truck operator decided to retaliate by going to the right rear tire of the Plaintiffs' vehicle and pulling out the valve stem, causing the tire to flatten.

34. The repo agent then returned to his tow truck, and continued to lurch his vehicle towards Mrs. Nezbeda, while continuing to jack up and down the Plaintiffs' occupied vehicle with his wheel lift.

35. Ultimately, the repo agent was stymied by the physical objections of the Plaintiffs.

36. Once law enforcement arrived, they advised the repo agent that he needed to leave the

property.

37. After being advised of the incident with the tire valve stem, the police officers directed the repo agent to return the tire valve stem to the police officers, but he refused to provide the tool needed to reinstall that tire stem.

38. Eventually, the Defendants' repo agent left the property.

39. However, the Plaintiffs' young children witnessed this entire horrifying ordeal and were crying and traumatized, believing that the family was being robbed.

40. Moreover, Mr. Nezbeda suffered physical injuries as a result of the Defendants actions during the repossession, forcing him to seek medical attention at the emergency room of the Atrium Health Floyd Polk Medical Center.

41. Furthermore, the Plaintiffs' vehicle sustained extensive damage, including to the transmission, wheels and mounts, as a result of the Defendants' actions.

## COUNT I

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. §1692f *et seq.***
**(Against All Defendants)**

42. Plaintiffs repeat, reiterate and incorporate the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length herein.

43. Plaintiffs bring this Count against Defendants Connect 1 and MV.

44. Section 1692f of the FDCPA prohibits debt collectors from using any unfair or unconscionable means to collect or attempt to collect any debt.

45. Section 1692f(6) of the FDCPA prohibits debt collectors from taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if:

    (A)   there is no present right to possession of the property claimed as collateral through an enforceable security interest; or

  (C) the property is exempt by law from such dispossession or disablement.

46. Under OCGA § 11–9–609(b)(2), a secured party may take possession of collateral after default, without judicial process, **only** if the repossession proceeds without a breach of the peace.

47. At the time of the attempted repossession and disablement, both Plaintiffs were actively orally and physically protesting the repossession – with Mr. Nezbeda inside the vehicle, and Mrs. Nezbeda physically blocking the tow truck from repossessing the vehicle - preventing the Defendants from towing the vehicle without resorting to a breach of the peace.

48. To repossess and disable the Plaintiffs' vehicle, the Defendants then resorted to dangerous and reckless maneuvers, such as trying to violently jack the occupied vehicle up and down, lurching the tow truck towards Ms. Nezbeda in an effort to scare her and move her out of the way, causing Mr. Nezbeda to suffer physical injuries, and lifting and moving an occupied vehicle.

49. As a result, the Defendants did not have the present right to possession of the Plaintiff's vehicle when they attempted to repossess it, and were prohibited from repossessing it.

50. Moreover, after committing their breach of the peace during their attempts to repossess the Plaintiffs' vehicle, Plaintiffs' vehicle was clearly exempt from repossession.

51. As a result, the Defendants violated 15 USC § 1692f(6) when they attempted to repossess the Plaintiffs' vehicle on October 6, 2023.  *See, Fulton v. Anchor Sav. Bank, FSB*, 215 Ga. App. 456, 461, 452 S.E.2d 208, 213 (1994)("the unequivocal oral protest of the defaulting debtor eliminates self-help repossession as a lawful alternative for the secured party").

52. By attempting to illegally repossess the Plaintiffs' vehicle in violation of the FDCPA Defendants harmed the Plaintiffs, in subjecting the Plaintiffs to improper and abusive collection activity, in violation of the Plaintiffs' statutorily created rights to be free from such a debt collector's inappropriate attempts to collect a debt, in physically assaulting Mr. Nezbeda and sending him to the hospital, in damaging the vehicle, and by subjecting the Plaintiffs to unfair and unconscionable means to collect a debt.

53. Defendants' illegal activity also harmed the Plaintiffs by causing them to suffer anger, fear, anxiety, physical pain, emotional distress, frustration and embarrassment.

54. By reason thereof, Defendants MV and Connect 1 are also liable to the Plaintiffs for judgment that Defendants' conduct violated 15 USC §1692f, statutory damages, actual damages, costs and attorneys' fees.

## COUNT II

### UNLAWFUL BREACH OF THE PEACE
### OCGA § 11–9–609(b)(2) *et seq.*
### (Against All Defendants)

55. Plaintiffs repeat, reiterate and incorporate the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length herein.

56. Plaintiffs bring this Count against Defendants Connect 1 and MV.

57. Georgia law does not permit non judicial or "self help" repossession of consumer motor vehicles if such repossession involves a breach of the peace. OCGA § 11–9–609(b)(2).

58. A secured creditor's duty to repossess without breach of the peace is non delegable, and it is liable even if the peace is breached by an independent contractor. *Lewis v. Nicholas Fin., Inc.*, 300 Ga. App. 888, 889–91, 686 S.E.2d 468, 469–70 (2009)("Because the secured creditor's duty to accomplish a nonjudicial repossession without breaching the peace is

statutory, that duty is nondelegable even though the creditor hires another party to perform the repossession").

59. On or about October 6, 2023, Defendants breached the peace when they tried to repossess the Plaintiffs' vehicle over their verbal and physical objections and through the use of dangerous and reckless maneuvers – such as trying to violently jack the occupied vehicle up and down, lurching the tow truck towards Ms. Nezbeda in an effort to scare her and move her out of the way, causing Mr. Nezbeda to suffer physical injuries, and lifting and moving an occupied vehicle.

60. As a result, the Defendants violated OCGA § 11–9–609(b)(2) when they attempted to repossess the Plaintiffs' vehicle on October 6, 2023.

61. By attempting to illegally repossess the Plaintiffs' vehicle on October 6, 2023 in violation of OCGA § 11–9–609(b)(2), Defendants harmed the Plaintiffs, in subjecting the Plaintiffs to improper and deceptive collection activity, in violation of the Plaintiffs' statutorily created rights to be free from such a debt collector's inappropriate attempts to collect a debt, in physically assaulting Mr. Nezbeda and sending him to the hospital, in damaging the Plaintiffs' vehicle, and by subjecting them to unfair and unconscionable means to collect a debt.

62. Defendants' illegal activity also harmed the Plaintiffs by causing them to suffer anger, anxiety, fear, physical pain, emotional distress, frustration and embarrassment.

63. By reason thereof, Defendants Connect 1 and MV are also liable to the Plaintiffs for judgment that Defendants' conduct violated OCGA § 11–9–609(b)(2), statutory damages, punitive damages, actual damages, costs and attorneys' fees.

## COUNT III

**WRONGFUL REPOSSESSION**
**(Against All Defendants)**

64. Plaintiffs repeat, reiterate and incorporate the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length herein.

65. Plaintiffs bring this Count against Defendants Connect 1 and MV.

66. Georgia law does not permit non judicial or "self help" repossession of consumer motor vehicles if such repossession involves a breach of the peace. OCGA § 11–9–609(b)(2).

67. A secured creditor's duty to repossess without breach of the peace is non delegable, and it is liable even if the peace is breached by an independent contractor. *Lewis v. Nicholas Fin., Inc.*, 300 Ga. App. 888, 889–91, 686 S.E.2d 468, 469–70 (2009)("Because the secured creditor's duty to accomplish a nonjudicial repossession without breaching the peace is statutory, that duty is nondelegable even though the creditor hires another party to perform the repossession").

68. On or about October 6, 2023, Defendants breached the peace when they tried to repossess the Plaintiffs' vehicle over their verbal and physical objections and through the use of dangerous and reckless maneuvers – such as trying to violently jack the occupied vehicle up and down, lurching the tow truck towards Ms. Nezbeda in an effort to scare her and move her out of the way, causing Mr. Nezbeda to suffer physical injuries, and lifting and moving an occupied vehicle.

69. As a result, the Defendants violated OCGA § 11–9–609(b)(2) when they attempted to repossess the Plaintiffs' vehicle on October 6, 2023.

70. By breaching the peace in attempting to repossess the Plaintiffs' vehicle on October 6, 2023, the Defendants committed the tort of wrongful repossession. *See, Borden v. Pope*

9

*Jeep-Eagle, Inc.*, 200 Ga. App. 176, 179, 407 S.E.2d 128, 131 (1991)("wrongful repossession occurs when a repossession is accompanied by a wrongful act, which shall mean an act that is in contravention of some legal duty owed to the party from whose possession the vehicle is being taken").

71. By wrongfully repossessing the Plaintiffs' vehicle, Defendants harmed the Plaintiffs, in subjecting the Plaintiffs to improper and deceptive collection activity, in violation of the Plaintiffs' statutorily created rights to be free from such a debt collector's inappropriate attempts to collect a debt, in physically assaulting Mr. Nezbeda and sending him to the hospital, in damaging the Plaintiffs' vehicle, and by subjecting them to unfair and unconscionable means to collect a debt.

72. Defendants' illegal activity also harmed the Plaintiffs by causing them to suffer anger, anxiety, fear, physical pain, emotional distress, frustration and embarrassment.

73. By reason thereof, Defendants Connect 1 and MV are also liable to the Plaintiff for judgment that Defendants attempted to wrongfully repossess the Plaintiff's vehicle, statutory damages, punitive, actual damages, costs and attorneys' fees.

## DEMAND FOR TRIAL BY JURY

74. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

    (a)    awarding Plaintiffs their actual damages incurred;

    (b)    awarding the Plaintiffs statutory damages, along with the attorneys' fees and expenses incurred in bringing this action;

(c) awarding the Plaintiffs punitive damages;

(c) Awarding pre-judgment interest and post-judgment interest; and

(f) Awarding Plaintiffs such other and further relief as this Court may deem just and proper.

Dated: December 29, 2023

                                              */s/ Misty Oaks Paxton*
                                              Misty Oaks Paxton, Esq.
                                              THE OAKS FIRM
                                              3895 Brookgreen Pt.
                                              Decatur, GA 30034
                                              Tel: (404) 500-7861
                                              Email:attyoaks@yahoo.com

                                              Yitzchak Zelman, Esq.
                                              MARCUS & ZELMAN, LLC
                                              701 Cookman Avenue, Suite 300
                                              Asbury Park, New Jersey 07712
                                              (732) 695-3282 telephone
                                              (732) 298-6256 facsimile
                                              *Attorney for Plaintiff*
                                              **Pro Hac Vice To Be Filed**